**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**FEDERAL TRADE COMMISSION,**

    **Plaintiff,**

    **v.**

**ENDO PHARMACEUTICALS INC., et al.,**

    **Defendants.**

---

**Case No.: 1:21-cv-217-RCL**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIALLY
APPEARING DEFENDANT ENDO INTERNATIONAL PLC'S MOTION TO DISMISS
COMPLAINT FOR LACK OF PERSONAL JURISDICTION OR, IN THE
ALTERNATIVE, FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 5

I.     The Complaint should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over Endo International. ................................................................. 5

     A.     The FTC fails to plead facts giving rise to specific jurisdiction over Endo International. ...................................................................................................... 6

         1.     Endo International does not have the suit-related contacts with the United States required to exercise specific jurisdiction. ........................... 7

             a.     Endo International engaged in no suit-related conduct in the United States. .................................................................................. 7

             b.     The FTC cannot establish specific jurisdiction over Endo International based on the alleged suit-related conduct of its subsidiary. .................................................................................... 9

     B.     The FTC fails to plead facts giving rise to general jurisdiction over Endo International. ..................................................................................................... 13

     C.     Exercising personal jurisdiction over Endo International would offend traditional notions of fair play and substantial justice. ....................................... 15

II.     In the alternative, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. .............................................. 16

CONCLUSION .................................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Administrators of Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*,
770 F. Supp. 2d 24 (D.D.C. 2011) ...............................................................................8, 11, 12

*Alkanani v. Aegis Def. Servs.*,
LLC, 976 F. Supp. 2d 13 (D.D.C. 2014) ........................................................................13, 14

*Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.*,
480 U.S. 102 (1987) ...............................................................................................................15

*Atlantigas Corp. v. Nisource, Inc.*,
290 F. Supp. 2d 34 (D.D.C. 2003) ......................................................................................9, 10

*Bigelow v. Garrett*,
299 F. Supp. 3d 34 (D.D.C. 2018) ...........................................................................................5

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
137 S. Ct. 1773 (2017) .............................................................................................................6

*Cockrum v. Donald J. Trump for President, Inc.*,
319 F. Supp. 3d 158 (D.D.C. 2018) .........................................................................................7

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ...............................................................................................................14

*Diamond Chem. Co. v. Atofina Chemicals, Inc.*,
268 F. Supp. 2d 1 (D.D.C. 2003) ...........................................................................................18

*In re Domestic Airline Travel Antitrust Litig.*,
221 F. Supp. 3d 46 (D.D.C. 2016) .........................................................................................16

*Erwin-Simpson v. AirAsia Berhad*,
985 F.3d 883 (D.C. Cir. 2021) ...........................................................................................5, 13

*F.T.C. v. Mallett*,
818 F. Supp. 2d 142 (D.D.C. 2011) .........................................................................................1

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) .............................................................................................................6

*GSS Grp. Ltd v. Nat'l Port Auth.*,
680 F.3d 805 (D.C. Cir. 2012) .................................................................................................5

*IMark Mktg. Servs., LLC v. Geoplast S.p.A.*,
    753 F. Supp. 2d 141 (D.D.C. 2010) ...............................................................15

*Jung v. Ass'n of Am. Med. Colleges*,
    300 F. Supp. 2d 119 (D.D.C. 2004) .............................................................16

*\*Khatib v. All. Bankshares Corp.*,
    846 F. Supp. 2d 18 (D.D.C. 2012) ...............................................10, 11, 12

*Leitner-Wise v. Clark*,
    No. CV 18-771, 2018 WL 6787999 (D.D.C. Dec. 26, 2018) ..................10

*Livnat v. Palestinian Auth.*,
    851 F.3d 45 (D.C. Cir. 2017) ...........................................................................5

*Maib v. FDIC*,
    771 F. Supp. 2d 14 (D.D.C. 2011) ................................................................3

*Mazza v. Verizon Washington DC, Inc.*,
    852 F. Supp. 2d 28 (D.D.C. 2012) .............................................................10

*\*Sapieyevski v. Live Nation Worldwide, Inc.*,
    No. 18-CV-830, 2020 WL 4432119 (D.D.C. July 31, 2020) ..............5, 13

*Toumazou v. Turkish Republic of N. Cyprus*,
    71 F. Supp. 3d 7 (D.D.C. 2014) ..................................................................17

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ..................................................................8, 9, 17, 18

*\*Walden v. Fiore*,
    571 U.S. 277 (2014) ........................................................................................6

**Statutes**

15 U.S.C. § 53(b) ..............................................................................................1

28 U.S.C. § 1391(c)(3) .......................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................1, 2, 16, 18

Fed. R. Civ. P. 12(b)(2) ........................................................................1, 5, 12

Specially Appearing Defendant Endo International plc ("Endo International") submits this memorandum of points and authorities in support of its motion to dismiss the Complaint for Injunctive and Other Equitable Relief ("Complaint") for lack of personal jurisdiction under Rule 12(b)(2) or, in the alternative, for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Endo International has nothing to do with this case, and the Plaintiff Federal Trade Commission ("FTC") alleges no facts to support its claims against Endo International. Endo International is named as a Defendant solely because one of its indirect subsidiaries, Endo Pharmaceuticals Inc. ("Endo Pharmaceuticals"), is alleged to have engaged in the conduct underlying the FTC's claims. Under settled law, that fact alone does not give the Court personal jurisdiction over a nonresident defendant such as Endo International. Moreover, the Complaint is devoid of factual allegations showing that Endo International had the required minimum contacts with the United States or related to this lawsuit that could justify subjecting Endo International to personal jurisdiction.[1]

The FTC challenges a 2017 agreement between Defendants Endo Pharmaceuticals and Impax Laboratories, LLC ("Impax") that settled a breach of contract lawsuit between Endo Pharmaceuticals and Impax related to the royalty Impax would pay under a license to certain pharmaceutical patents owned by Endo Pharmaceuticals (the "2017 Contract Settlement Agreement"). Endo International, a foreign holding company organized and headquartered in

---

[1]     Endo International recognizes that because 15 U.S.C. § 53(b) authorizes nationwide service of process, and because venue as to Endo International is appropriate under 28 U.S.C. § 1391(c)(3), the relevant "contacts" for due process purposes are Endo International's contacts with the United States as a whole. *See F.T.C. v. Mallett,* 818 F. Supp. 2d 142, 147 (D.D.C. 2011).

Ireland, was not a party to the 2017 Contract Settlement Agreement, was not a party to the underlying litigation resolved by that agreement, and does not own any of the relevant patents.  It does not engage in operations involving the development, regulatory approval, manufacture, distribution, sales, launch, or marketing of the prescription medication at issue in this lawsuit.  And it is neither incorporated nor headquartered in the United States.

Endo International's position as Endo Pharmaceuticals' indirect parent company is insufficient as a matter of law to confer personal jurisdiction over Endo International.  The FTC has failed to allege facts plausibly showing that Endo Pharmaceuticals is the agent of Endo International, or that Endo International so dominated Endo Pharmaceuticals such that adherence to the corporate form would sanction a fraud or promote injustice.  Endo International has no direct control over Endo Pharmaceuticals' day-to-day activities related to the regulatory approval, manufacture, distribution, sales, launch, or marketing of prescription medications in the United States.

In sum, the complete absence of a connection between Endo International and any of the allegedly anticompetitive conduct challenged in the Complaint, or the United States generally, violates traditional notions of fair play and substantial justice, and the exercise of personal jurisdiction over Endo International would be unconstitutional under the Due Process Clause of the United States Constitution.  Endo International should be dismissed from this action for this reason alone.

In the alternative, the Complaint should be dismissed against Endo International for failure to state a claim under Federal Rule 12(b)(6) for the reasons set forth in Endo Pharmaceuticals' Motion to Dismiss and supporting Memorandum of Law, Dkt. 51, which Endo International joins in and incorporates by reference.  Further, the Complaint is deficient as to Endo International

because it pleads no facts plausibly suggesting that Endo International participated—either directly or indirectly—in the alleged conduct that forms the basis for the FTC's lawsuit.

## BACKGROUND

Endo International is an Irish holding company headquartered in Dublin, Ireland, and the indirect parent company of Endo Pharmaceuticals. *See* Compl. ¶ 14. It was not a party to the 2017 Contract Settlement Agreement. *See* 2017 Contract Settlement Agreement, ENDO 2019 OPANA CID 00010309, at -309, 313, 315 (identifying the party to the agreement, the party to be noticed, and the signatory as "Endo Pharmaceuticals Inc.").[2] The FTC nevertheless asserts in conclusory fashion that Endo International "own[s] assets related to oxymorphone ER," that "[t]hrough Endo Pharmaceuticals . . . Endo International currently sells distinct opioid medications in the United States," and that "[c]orporate officers from Endo International negotiated and approved the agreement challenged in the complaint, and the president of Endo International 'made the ultimate decision whether to enter into the agreement.'" Compl. ¶ 14.

The FTC's unsupported allegations are wrong, as demonstrated by the accompanying declarations of Deanna Voss and Paul Campanelli. *See generally* Declaration of Deanna Voss [hereafter "Voss Decl."]; Declaration of Paul Campanelli [hereafter "Campanelli Decl."]. Endo International is not registered to do business in the United States, does not have a headquarters in the United States, has no employees in the United States, and does not own assets related to oxymorphone ER. Voss Decl. ¶¶ 5-6. Moreover, Endo International does not develop,

---

[2]     The 2017 Contract Settlement Agreement is Exhibit B to Endo Pharmaceuticals' Motion to Dismiss for Failure to State a Claim, Dkt. 51-3, incorporated herein by reference. The Court can consider "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss." *Maib v. FDIC*, 771 F. Supp. 2d 14, 17 (D.D.C. 2011) (internal quotation marks and citations omitted).

manufacture, distribute, sell, market, or launch opioid medications—or any other product—in the United States.  Voss Decl. ¶ 4.  Those activities are conducted by one of its indirectly held subsidiary operating companies.  Voss Decl. ¶ 7.

More specific to the Complaint, the parties to the 2017 Contract Settlement Agreement were Endo Pharmaceuticals and Impax; Endo International had nothing to do with it.  *See* 2017 Contract Settlement Agreement, ENDO 2019 OPANA CID 00010309, at -309.  Nor was Endo International a party to the lawsuit settled by that agreement or an owner of any of the relevant patents.  *See id.*; Complaint, *Endo Pharm. Inc. v. Impax Labs., Inc.*, No. 16-2526, Dkt. No. 1, ¶¶ 31-36 (D.N.J. May 4, 2016).  The involvement of Paul Campanelli, the former President and CEO of Endo Pharmaceuticals, in the negotiation, approval, and signing of the 2017 Contract Settlement Agreement was exclusively in his capacity as President and CEO of Endo Pharmaceuticals—not as an officer of Endo International.  Campanelli Decl. ¶ 4.

Endo Pharmaceuticals is an indirect operating subsidiary of Endo International and constitutes a distinct legal entity.  Voss Decl. ¶ 7.  Endo Pharmaceuticals maintains a corporate structure and operations distinct from those of Endo International.  Voss Decl. ¶ 7.  Endo Pharmaceuticals has carried out activities relating to the regulatory approval, development, manufacture, distribution, sales, launch, and marketing of prescription medications in the United States, with its own corporate officers, board of directors and management structure.  Voss Decl. ¶ 7.  By contrast, Endo International's officers do not have direct control over such day-to-day operational decisions.  Voss Decl. ¶ 8.

## ARGUMENT

**I.      The Complaint should be dismissed under Rule 12(b)(2) because this Court lacks personal jurisdiction over Endo International.**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff is required to make a "*prima facie* showing" that jurisdiction exists.  *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017).  "Conclusory statements or a bare allegation of conspiracy or agency do not satisfy this burden."  *Id.* (internal quotation marks omitted).  "The Court need not accept the plaintiff's allegations as true and may receive and weigh affidavits and other relevant matter[s] to assist in determining the jurisdictional facts."  *Bigelow v. Garrett*, 299 F. Supp. 3d 34, 41 (D.D.C. 2018) (internal quotation marks omitted).  The Court "is not required to accept inferences unsupported by the facts."  *Sapieyevski v. Live Nation Worldwide, Inc.*, No. 18-CV-830, 2020 WL 4432119, at *1 (D.D.C. July 31, 2020).

To establish personal jurisdiction over a nonresident defendant such as Endo International, due process requires that "the defendant must 'have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Livnat*, 851 F.3d 45 at 48 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[3]  The Supreme Court has recognized two theories under which a court may exercise "contact-based" personal jurisdiction over a defendant.  *Erwin-Simpson v. AirAsia Berhad*, 985 F.3d 883, 888 (D.C. Cir. 2021).  "The first, specific jurisdiction, 'depends on an affiliatio[n] between the forum and the underlying controversy' . . . ."  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  The second, general jurisdiction, "permits

---

[3]      Foreign entities such as Endo International "are entitled to due process protection, despite the fact they have no meaningful connection to the United States."  *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 817 (D.C. Cir. 2012).

a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit." *Id.* at 889 (internal quotation marks omitted).

Here, the FTC cannot meet its burden of establishing that this Court can exercise personal jurisdiction over Endo International under either theory. Even if the FTC could establish the requisite minimum contacts, which it cannot, the exercise of jurisdiction over Endo International would fail to comply with notions of fair play and substantial justice. *See Mwani v. bin Laden*, 417 F.3d 1, 14 (D.C. Cir. 2005) ("[E]ven after it has been decided that a defendant purposefully established minimum contacts within the forum . . . , these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." (internal quotation marks omitted)).

### A.       The FTC fails to plead facts giving rise to specific jurisdiction over Endo International.

To establish specific jurisdiction over a nonresident defendant, "the defendant's suit-related conduct must create a substantial connection with the forum . . . ." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). This analysis focuses on "the relationship among the defendant, the forum, and the litigation," and the relationship must arise out of or relate to contacts that the "defendant himself" creates with the forum. *Id.* "In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). The U.S. Supreme Court has clarified that general contacts are insufficient—specific jurisdiction is appropriate only where there is a direct "affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017) (quoting *Goodyear*, 564 U.S.

at 919).  "When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities" in the forum.  *Id.*

> **1.      Endo International does not have the suit-related contacts with the United States required to exercise specific jurisdiction.**

The Complaint is devoid of factual allegations that Endo International engaged in suit-related conduct in the United States.  Further, the FTC has failed to allege facts sufficient to show that the alleged conduct of Endo Pharmaceuticals can be imputed to Endo International under an agency or alter-ego theory of personal jurisdiction.

> **a.      Endo International engaged in no suit-related conduct in the United States.**

What constitutes suit-related conduct is dictated by "the contours of plaintiffs' claims." *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 175 (D.D.C. 2018).  Here, the FTC has not, and cannot, allege that Endo International engaged in any conduct within the contours of the FTC's claims.

The FTC's claims arise out of an allegedly "anticompetitive agreement between Endo and Impax designed to create and maintain a monopoly for oxymorphone ER."  Compl. ¶ 1.  The agreement at issue is the royalty provision in the 2017 Contract Settlement Agreement that resolved a breach of contract lawsuit related to oxymorphone ER.  Compl. ¶ 3.  According to the Complaint, the "purpose and effect of the 2017 Agreement is to ensure that Endo [Pharmaceuticals], the gatekeeper to competition in the oxymorphone ER market, has every incentive to preserve Impax's monopoly" and "eliminates any potential for oxymorphone ER competition."  Compl. ¶ 4.  Based on the FTC's allegations, the "contours" of its claims for purposes of the specific jurisdiction analysis are limited to (1) the allegedly anticompetitive 2017 Contract Settlement Agreement, and (2) any plans to launch or license a generic version of oxymorphone ER.

As explained above, however, Endo International had nothing to do with either the 2017 Contract Settlement Agreement or any decision regarding whether or not Endo Pharmaceuticals would launch another version of oxymorphone ER.  It is clear from the agreement itself that Endo Pharmaceuticals, not Endo International, was the party to the 2017 Contract Settlement Agreement.  *See* 2017 Contract Settlement Agreement, ENDO 2019 OPANA CID 00010309, at -309, 313, 315.  Paul Campanelli, the former President and CEO of Endo Pharmaceuticals, signed the 2017 Contract Settlement Agreement in his capacity as President and CEO of Endo Pharmaceuticals, as is clear from the four corners of the agreement.  *Id.* at -315.  Even the FTC recognizes that it was Endo Pharmaceuticals and not Endo International that entered into the relevant agreement.  *See* Compl. ¶ 12 ("Endo Pharmaceuticals entered into the anticompetitive agreement challenged in this complaint.").[4]

That Mr. Campanelli also served as President and CEO of Endo International at the time, does not change the analysis.  Mr. Campanelli can act for Endo Pharmaceuticals without also acting for Endo International.  *See United States v. Bestfoods,* 524 U.S. 51, 69 (1998) (explaining that it is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." (internal quotation marks omitted)); *see also Administrators of Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 770 F. Supp. 2d 24, 28 (D.D.C. 2011) (refusing to exercise personal jurisdiction on the basis that related entities had overlapping directors because "[a]fter all, it is entirely appropriate for directors of a parent corporation to serve

---

[4]     The FTC's claim, entirely unsupported, that "[c]orporate officers from Endo International negotiated and approved the agreement . . . and the president of Endo International 'made the ultimate decision whether to enter into the agreement . . .'", Compl. ¶ 14, is squarely contradicted by both the 2017 Contract Settlement Agreement and Mr. Campanelli's declaration.

as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary acts." (internal quotation marks omitted)). That is precisely what happened here. Mr. Campanelli's declaration affirms that he was acting only for Endo Pharmaceuticals in the negotiation, approval, and signing of the 2017 Contract Settlement Agreement. Campanelli Decl. ¶ 4.

Moreover, Endo International does not develop, manufacture, distribute, sell, launch, or market any pharmaceutical product—let alone oxymorphone ER—in the United States. Voss Decl. ¶ 4. And contrary to the unsupported allegations in the Complaint, Endo International does not "own assets related to oxymorphone ER." Compl. ¶ 14; Voss Decl. ¶ 5. Nor does Endo International have direct day-to-day control over whether Endo Pharmaceuticals would launch or license pharmaceutical products in the United States. Voss Decl. ¶¶ 4, 8. These operational tasks and responsibilities are handled exclusively by its U.S. operating companies, including Endo Pharmaceuticals. Voss Decl. ¶ 7. Clearly, Endo International engaged in no "suit-related conduct" in the United States.

        **b.**    **The FTC cannot establish specific jurisdiction over Endo International based on the alleged suit-related conduct of its subsidiary.**

Nor can the FTC establish specific jurisdiction over Endo International based on the contacts of its indirect subsidiary, Endo Pharmaceuticals. "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61 (internal quotation marks omitted); *see also Atlantigas Corp. v. Nisource, Inc.*, 290 F. Supp. 2d 34, 48 (D.D.C. 2003) ("Ordinarily, a defendant corporation's contacts with a forum may not be attributed to affiliated corporations.").

For this reason, courts in this Circuit have repeatedly held that there was no personal jurisdiction over a parent corporation based on its subsidiary's contacts with the forum.[5]

While the D.C. Circuit has recognized two limited exceptions to the rule that a defendant subsidiary's forum contacts may not be attributed to a parent company, neither applies here.  *See Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 31 (D.D.C. 2012) (citing *El–Fadl v. Centr. Bank of Jordan,* 75 F.3d 668, 675–76 (D.C. Cir. 1996) (abrogated on other grounds)).  First, "there may be times when a court can exercise personal jurisdiction over a principal based on the activities of an agent" where the activities of the subsidiary must be "of such a character as to amount to doing business of the parent."  *Id.* at 32.  "This test is satisfied by showing that the subsidiary performs services that are sufficiently important to the foreign corporation that if it did not have a representative perform them, the corporation's own officials would undertake to perform substantially similar services."  *Id.*  (internal quotation marks omitted).

Second, contacts of a subsidiary may be attributed to a parent where a subsidiary is nothing more than the "alter ego" of the parent corporation.  *See Atlantigas Corp.*, 290 F. Supp. at 48.  "Courts will impute personal jurisdiction under an alter ego theory in cases where the parent company so dominated the [subsidiary] corporation as to negate its separate personality."  *Mazza*,

---

[5]     *See, e.g.*, *Mazza v. Verizon Washington DC, Inc.*, 852 F. Supp. 2d 28, 41 (D.D.C. 2012) (refusing to disregard corporate form and impute contacts of subsidiary to parent holding corporation when conclusory allegations did not demonstrate that parent exercised "active and substantial control" over subsidiaries); *Khatib v. All. Bankshares Corp.*, 846 F. Supp. 2d 18, 33 (D.D.C. 2012) (holding that plaintiff had failed to overcome the "presumption that legally distinct corporate entities are indeed separate" with only "bare allegation[s] of agency" and refusing to impute subsidiary contacts to parent holding company); *Leitner-Wise v. Clark*, No. CV 18-771 (BAH), 2018 WL 6787999, at *4–5 (D.D.C. Dec. 26, 2018) (holding that subsidiary's contacts with forum were insufficient to impute specific personal jurisdiction to parent company); *Atlantigas Corp.*, 290 F. Supp. at 48 (rejecting argument that related entity's contacts were sufficient to confer jurisdiction when pleadings were devoid of any allegations showing that corporate defendant "dominated" the related entity).

852 F. Supp. 2d at 41 (internal quotation marks omitted). This is a "rare exception grounded in equity considerations, and is only to be applied when, inter alia, an adherence to the fiction of the separate existence of the corporation would sanction a fraud or promote injustice." *Administrators of Tulane Educ. Fund*, 770 F. Supp. 2d at 28 (internal quotation marks omitted). To satisfy this standard, "the plaintiff must show that the corporate parent exercises a level of control over its subsidiary that is above and beyond the level of control that suffices to invoke the 'agency' exception." *Khatib*, 846 F. Supp. 2d at 32. Notably, shared directors, joint promotion of products, and a parent providing guidance to a subsidiary are insufficient to show domination and thus expose a parent corporation to jurisdiction based on the acts of a subsidiary. *See Administrators of Tulane Educ. Fund*, 770 F. Supp. 2d at 30.

Neither of these limited exceptions applies here. With respect to the first exception, the Complaint fails to plead facts showing that Endo Pharmaceuticals was the "agent" of Endo International for jurisdictional purposes. By the FTC's own admission, Endo International is a holding company. Compl. ¶ 14. It does not develop, manufacture, distribute, sell, launch, or market any pharmaceutical products in the United States—these tasks are carried out by its operating company subsidiaries including Endo Pharmaceuticals. Voss Decl. ¶¶ 4, 7. This relationship—between a holding company and its indirect subsidiary that conducts actual operations—is insufficient to establish jurisdiction under an agency theory. *See Khatib*, 846 F. Supp. 2d at 32 ("Courts are in agreement that, as a general rule, it is generally improper to impute the contacts of a subsidiary to a corporate parent that is a holding company because 'the subsidiary is not performing a function that the parent would otherwise have to perform itself (the holding company could simply hold another type of subsidiary).").

With respect to the second exception, the Complaint also fails to establish personal jurisdiction under the more exacting "alter-ego" theory. *See Khatib*, 846 F. Supp. 2d at 32 (explaining that because plaintiff had "failed to satisfy the lesser standard under the 'agency' exception . . . it follows that [plaintiff] has also failed to meet the standard required to invoke the 'alter ego' exception."). There are no factual allegations in the Complaint from which to infer that Endo International "so dominated" Endo Pharmaceuticals to justify the rare act of disregarding the corporate form for jurisdictional purposes. The Voss declaration explains that Endo Pharmaceuticals is a "legal entity separate and distinct . . . with its own corporate officers, board of directors, and management." Voss Decl. ¶ 7.

The District Court for the District of Columbia's decision in *Administrators of the Tulane Educational Fund v. Ipsen Pharma, S.A.S.*, is instructive. 770 F. Supp. 2d 24, 28 (D.D.C. 2011). That case involved a French pharmaceutical corporation ("Ipsen") and its subsidiary ("Ipsen Pharma") which were sued for correction of inventorship under the U.S. patent laws. *Id.* at 25–26. Ipsen moved to dismiss the claim under Rule 12(b)(2) for lack of jurisdiction. *Id.* at 27. Plaintiffs claimed that the court had personal jurisdiction over Ipsen on the basis that Ipsen was the alter-ego of Ipsen Pharma, relying on allegations concerning "(1) the shared officers and directors between the two companies; (2) that Ipsen's Operations Committees provide general guidance to . . . Ipsen Pharma, and (3) that in press releases, Ipsen claims to be the originator of" the compound covered by the patent at issue. *Id.* at 30. The court rejected this argument and explained that "this alone, however, is not enough! After all, it is 'entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary acts.'" *Id.* (quoting *Diamond Chem. Co. v. Atofina Chemicals, Inc.,* 268 F. Supp. 2d 1, 9 (D.D.C. 2003)). As the court further

explained, "[n]or is it unusual for a parent corporation to provide guidance to its subsidiaries" and "joint promotion without more does not mandate the finding that a subsidiary is a mere shell for its parent." *Id.* Finally, because "plaintiffs have also failed to demonstrate that adherence to the fiction of the separate existence of the corporation would sanction fraud or promote injustice," it had failed the second prong of the alter-ego analysis. *Id.*

The FTC has not alleged facts that could support either a conclusion that Endo International dominated the operations of Endo Pharmaceuticals or that it would sanction fraud or promote injustice to recognize the corporate distinctions between Endo International and Endo Pharmaceuticals. The FTC's allegations regarding shared leadership, trade names, logos, and websites are insufficient. Such allegations fall squarely into the categories of information that courts in this Circuit have held were insufficient to establish jurisdiction. *See id.* (explaining that shared officers and joint promotion were insufficient to confer jurisdiction); *see also Sapieyevski*, 2020 WL 4432119, at *3 (refusing to exercise specific jurisdiction based on an alter-ego theory when plaintiff alleged that both entities used the same address, domain, and logo, holding that "[s]haring an address, marketing image, and [a] management employee does not satisfy [plaintiff's] heavy burden."). The FTC's allegations are insufficient to justify the "rare exception" of disregarding the corporate form and exercising jurisdiction over Endo International based on the contacts of its subsidiary.

**B.    The FTC fails to plead facts giving rise to general jurisdiction over Endo International.**

General jurisdiction over a foreign corporation satisfies due process only "when [its] affiliations with the [forum] are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Erwin-Simpson*, 985 F.3d at 890–91 (quoting *Goodyear*, 564 U.S. at 919); *see also Alkanani v. Aegis Def. Servs.*, LLC, 976 F. Supp. 2d 13, 29 (D.D.C. 2014) (finding that a

foreign corporation's contacts with the forum must be "so extensive, so constant, and so prevalent" that they render it "essentially at home" in the forum).  For a corporation, the appropriate forums for exercising general jurisdiction are a corporation's "place of incorporation and principal place of business" because both are considered places "in which the corporation is fairly regarded as at home."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

Under this standard, Endo International is not "at home" in the United States and therefore cannot be subject to general jurisdiction here.  Endo International is organized under the laws of Ireland and has its principal place of business in Dublin.  Voss Decl. ¶ 3.  Endo International is not registered to do business in the United States, has no agent for service of process in the United States, and has no employees in the United States.  Voss Decl. ¶ 6.  For these reasons, any argument that Endo International is subject to general jurisdiction in the United States can be dispensed with quickly.  *See Daimler*, 571 U.S. at 139.

Moreover, this Court cannot exercise personal jurisdiction over Endo International merely because it has a subsidiary that is headquartered and incorporated in the United States.  *See Daimler*, 571 U.S. at 136-39 (finding there was no general jurisdiction over foreign corporate parent that was neither incorporated in nor had its principal place of business in the U.S. forum despite U.S. subsidiary).  "[T]he Supreme Court has emphatically rejected the theory that foreign corporations can be subject to general jurisdiction whenever they have an in-state subsidiary or affiliate, calling it an inappropriately 'sprawling view of general jurisdiction[.]'" *Alkanani v. Aegis Def. Servs.*, *LLC*, 976 F. Supp. 2d 13, 34 (D.D.C. 2014); *see also supra,* Section I.A.1.b. (explaining that the FTC's allegations fail to support any form of agency or alter-ego liability on behalf of Endo International).

For the forgoing reasons, Endo International cannot be subject to general jurisdiction in the United States.

### C.     Exercising personal jurisdiction over Endo International would offend traditional notions of fair play and substantial justice.

Given the lack of sufficient minimum contacts with the United States, the exercise of personal jurisdiction over Endo International "would offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cty.,* 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe*, 326 U.S. at 316) (internal quotation marks omitted). The determination of the reasonableness of the exercise of jurisdiction depends on several factors, including "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief." *Id.* (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980) (explaining that further considerations are "the interstate judicial system's interest in obtaining the most efficient resolution of controversies . . . and the shared interest of the several States in furthering fundamental substantive social policies")). There are no "mechanical tests" or "talismanic formulas," and instead, the Court "must consider whether [the defendant's] 'conduct and connection with the [forum] are such that [it] should reasonably anticipate being haled into court there.'" *IMark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 156–57 (D.D.C. 2010) (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 297).

Endo International is organized under the laws of and domiciled in Ireland and has no relevant contacts with the United States. *See generally* Voss Decl. The burden imposed on Endo International if it remains a party to this lawsuit would therefore be substantial. *See, e.g.*, *Asahi*, 480 U.S. at 114 ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."). Second, while the United States has a strong

interest in effective enforcement of the antitrust laws, it has no meaningful interest in enforcement against a foreign corporation that has no relevant connections to the United States related to this lawsuit.  Finally, Endo International's presence in or absence from this litigation has no effect on the FTC's ability to obtain meaningful relief.  Endo Pharmaceuticals—a fully capitalized U.S. subsidiary that was a party to the agreement at issue in this case and was responsible for any plans to launch or license a generic version of oxymorphone ER—is already a named defendant.

## II.    In the alternative, the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In the alternative, the Complaint should be dismissed for failure to state a claim against Endo International because the FTC has pleaded no facts supporting a plausible inference that Endo International had any involvement in the 2017 Contract Settlement Agreement.  In addition, the Complaint does not allege sufficient facts to pierce the corporate veil and impute potential liability for Endo Pharmaceuticals to Endo International.  Finally, as discussed in Endo Pharmaceuticals' Motion to Dismiss, the FTC's allegations in this case are insufficient, as a matter of law, to state a claim for an antitrust violation.

First, to state a claim against each defendant, the FTC must plead facts plausibly "alleging that each defendant participated in or agreed to join" the agreement in restraint of trade.  *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 163 (D.D.C. 2004) (granting motion to dismiss for failure to state a claim in Section 1 case when allegations that individual defendant participated in conspiracy were "vague, conclusory, and simply insufficient" to meet plaintiffs' pleading burden); *see also In re Domestic Airline Travel Antitrust Litig.*, 221 F. Supp. 3d 46, 72 (D.D.C. 2016) (explaining that plaintiff bears the burden of "alleging that each defendant participated in or agreed to join the conspiracy and played some role in it." (quoting *Jung*, 300 F. Supp. 2d at 163)).

16

The only allegation in the Complaint that attempts to tie Endo International to the allegedly anticompetitive agreement is the FTC's conclusory allegation that "[c]orporate officers from Endo International negotiated and approved the agreement challenged in the complaint, and the president of Endo International 'made the ultimate decision whether to enter into the agreement.'" Compl. ¶ 14. Importantly, however, the FTC does not allege that those unidentified officers negotiated and approved the 2017 Contract Settlement Agreement in their capacity as officers of Endo International.  Nor could it.  Endo International had nothing to do with the 2017 Contract Settlement Agreement. *See supra* Section I.A.1.a.  The 2017 Contract Settlement Agreement is clear—Paul Campanelli signed the 2017 Contract Settlement Agreement in his capacity as President and CEO of Endo Pharmaceuticals.  2017 Contract Settlement Agreement, ENDO 2019 OPANA CID 00010309, at -315.  And, as explained above, Mr. Campanelli's declaration affirms that he was acting only for Endo Pharmaceuticals.  Campanelli Decl. ¶ 4.

Second, the Complaint fails to plead facts capable of supporting a conclusion that Endo International should be held liable for the acts of its subsidiary.  "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries."  *Bestfoods*, 524 U.S. at 61.  "Veil-piercing is an extraordinary procedure that courts should not use lightly, and only extreme circumstances call for disregard of corporate form."  *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 19 (D.D.C. 2014) (quoting *Schattner v. Girard*, 668 F.2d 1366, 1370 (D.C. Cir. 1981)).  "The D.C. Circuit . . . has found piercing the veil to be justified when 'the corporation, rather than being a distinct, responsible entity, is in fact the alter ego or business conduit of the person [or corporation] in control.'"  *Id.*  (quoting *Labadie Coal Co. v. Black*, 672 F.2d 92, 97 (D.C. Cir. 1982)).

For similar reasons as those discussed in Section I.A.1.b, *supra*, the FTC's allegations fail to support any application of agency or alter-ego liability on behalf of Endo International. Endo International is a distinct legal entity that maintains a corporate structure and operations that are entirely separate from Endo Pharmaceuticals. *See* Voss Decl. ¶ 7. Further, despite the fact that Endo International and Endo Pharmaceuticals share certain officers, these officers, in their distinct role with Endo International, exercise no direct day-to-day control over subsidiary operations.[6] Voss Decl. ¶ 8. The FTC does not allege any facts that could support a conclusion that Endo International so dominated the operations of Endo Pharmaceuticals that the "extraordinary procedure" of veil piercing would be necessary to avoid the sanctioning of fraud or the promotion of injustice. There is no basis to hold Endo International liable for the acts of its subsidiary.

Third, the FTC's theory of antitrust liability fails as a matter of law for all the reasons explained in Endo Pharmaceuticals' Motion to Dismiss. Accordingly, the Complaint should be dismissed for the independent reason that it fails to state a claim pursuant to Rule 12(b)(6).

## **CONCLUSION**

For the reasons set forth herein, Endo International respectfully requests that the Court grant its Motion to Dismiss and dismiss all claims in the Complaint as to Endo International for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

---

[6]     The fact that Endo International has officers that also serve as officers of Endo Pharmaceuticals is immaterial. *See Diamond Chem. Co.*, 268 F. Supp. 2d at 9 ("The Supreme Court has recognized that 'it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary acts.'" (quoting *Bestfoods*, 524 U.S. at 69)).

Dated:  April 26, 2021

Respectfully submitted,

*/s/* George G. Gordon
George G. Gordon (admitted *pro hac vice*)
Julia Chapman (admitted *pro hac vice*)
**Dechert LLP**
Cira Centre, 2929 Arch Street
Philadelphia, PA  19104
Tel.:  (215) 994 4000
Fax:  (215) 994-2222
george.gordon@dechert.com
julia.chapman@dechert.com

*/s/* Craig Falls
Craig Falls (Bar #502368)
Eric D. Hageman (Bar #1601820)
**Dechert LLP**
1900 K St. NW
Washington, DC 20006
Tel.:  (202) 261-3300
Fax:  (202) 261-3333
craig.falls@dechert.com
eric.hageman@dechert.com

*Counsel for Specially Appearing Defendant
Endo International plc*

19

**CERTIFICATE OF SERVICE**

I certify that on April 26, 2021, I filed the foregoing memorandum of points and authorities and all attachments with the Clerk of the Court via the CM/ECF system, which will automatically send electronic mail notification of such filing to the CM/ECF registered participants as identified on the Notice of Electronic Filing.

/s/ *George G. Gordon*
Counsel for Specially Appearing Defendant
Endo International plc